**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ROBERT MORRIS DOTSON, JR.,
        *Defendant-Appellant.*

No. 02-4208

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-01-249)

Argued: February 25, 2003

Decided: March 28, 2003

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Luttig and Judge King joined.

## COUNSEL

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public
Defender, Greensboro, North Carolina, for Appellant. Clifton Thomas
Barrett, Assistant United States Attorney/Chief, Criminal Division,
Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills
Wagoner, United States Attorney, Greensboro, North Carolina, for
Appellee.

**OPINION**

TRAXLER, Circuit Judge:

Robert Morris Dotson, Jr., pled guilty to attempting to receive in commerce a child pornography videotape, in violation of 18 U.S.C.A. § 2252A(a)(2)(B) and (b)(1) (West 2000). He now appeals the district court's application of the United States Sentencing Guidelines ("U.S.S.G."). In particular, he disputes a two-level increase under U.S.S.G. § 2G2.2(b)(5) (2000) for the use of a computer in connection with the offense. He also appeals the imposition of potential polygraph and penile plethysmograph testing for treatment during his supervised release. For the reasons set forth below, we affirm.

I.

On November 30, 2000, a postal inspector in Ohio, posing as a pornography peddler, posted an advertisement on a predisposed Internet newsgroup, soliciting individuals to buy videotapes depicting child pornography. The next day, the inspector received an e-mail message from Dotson requesting more information about this offer. On December 21, 2000, Dotson sent an Internet message letting the inspector know he was preparing to order tapes. Two days later, Dotson again used the Internet to contact the inspector. He ordered two "custom" videotapes of girls between 9 and 12 years old, for which he provided graphic details of his preferences. On January 16, 2001, the Ohio postal inspector delivered to the postal inspector in North Carolina a package of the pornographic materials ordered by Dotson, plus Dotson's money order for the purchase, as well as assorted gifts Dotson had sent for the young participants in the video. The controlled package was delivered on February 22, 2001, and agents apprehended Dotson who later pled guilty to violations of 18 U.S.C.A. § 2252A(a)(2)(B) and (b)(1).

After the guilty plea, the probation officer prepared a presentence report ("PSR"). At the sentencing hearing, there remained an unresolved objection to the PSR's recommended two-level increase under U.S.S.G. § 2G2.2(b)(5) for the use of a computer for the notice or advertisement of the pornographic material. Dotson also objected to a special condition of his supervised release, requiring his participa-

tion "in an evaluation and a mental health program with emphasis on sex offender treatment at the discretion of the probation officer." J.A. 53. The district court stated that such "[t]reatment may include physiological testing such as the polygraph and penile plethysmograph, [and] the use of prescribed medications. The results of any polygraph or penile plethysmograph testing shall not be made public." *Id.* Dotson specifically objected to the potential use of these two types of testing as part of his treatment program. The district court rejected Dotson's objection as to the guideline enhancement and the potential use of the physiological tests during his supervised release. The court also imposed another special condition on Dotson's release, ordering him not to form a romantic interest or sexual relationship with anyone having custody of a child under age eighteen. Dotson now appeals the increase in his sentence under U.S.S.G. § 2G2.2(b)(5) and the physiological tests with which he may be confronted upon his release.*

## II.

Legal determinations concerning a guideline application are subject to de novo review. *United States v. Blake*, 81 F.3d 498, 503 (4th Cir. 1996). Special conditions of supervised release are reviewed for abuse of discretion. *United States v. Crandon*, 173 F.3d 122, 127 (3d Cir.), *cert. denied*, 528 U.S. 855 (1999).

## A.

The first question is whether the court properly applied the Sentencing Guidelines in finding that Dotson's receipt of a notice or advertisement for child pornography qualified for the two-point enhancement under U.S.S.G. § 2G2.2(b)(5). Section 2G2.2(b)(5) states that "[i]f a computer was used for the transmission of the material or a notice or advertisement of the material, increase by 2 levels." There is no dispute that a computer was used to transmit notice and advertisement of the material from the inspector to Dotson, and that Dotson replied to the advertisement and made arrangements for the purchase and receipt of the materials advertised by way of computer.

---

*Dotson's appeal initially included an objection to the court-imposed limitations on his ability to form romantic attachments, but because of a change in circumstances he withdrew this objection at oral argument.

Dotson argues that the enhancement should not apply, however, because it should be read as offender, rather than offense, specific. That is to say, he contends that it should only apply if *he* sent out the notice or advertisement. However, the plain language of the guideline reads otherwise. Had the Sentencing Commission intended to limit the scope of the enhancement to defendants who forwarded notices or advertisements, it could have easily done so by referring to the defendant in the text of the guideline. For example, U.S.S.G. § 2G2.2(b)(4), which immediately preceeds the provision at issue, inserts the word "defendant" into the text to describe patterns of activity involving abuse or exploitation of a minor that merit a five-level increase. By contrast, U.S.S.G. § 2G2.2(b)(5) makes no mention of the defendant, but focuses on the mechanism involved in the offense — the computer itself — as a ground for a two-level increase. In wording the guideline as it did, the Commission addressed not only the solicitor, but also the recipient of such solicitation — here, Dotson interacting with a predisposed Internet news group — who purposely avails himself of a discreet way to access illicit material. The guideline also captures those who first obtain notice of the material by way of computer, but later adopt other methods (*e.g.*, via telephone or mail) for consummating their illegal transactions.

In a similar case, where a defendant downloaded child pornography onto his computer in response to an advertisement, the Seventh Circuit Court of Appeals determined that the U.S.S.G. § 2G2.2(b)(5) enhancement was applicable even though the defendant had not himself sent out notice or advertisement of the offending material. *See United States v. Richardson*, 238 F.3d 837, 841-42 (7th Cir.), *cert. denied*, 532 U.S. 1057 (2001). There, the court found that the phrase "computer . . . used for the transmission" did not mean "computer . . . used *by the defendant* for transmission." *Id.* at 841 (internal quotation marks omitted). Rather, the court explained, the

> [u]se of the Internet enhances the dangers that child pornography poses, because it is a more discreet and efficient method of distribution; but if this makes the sender more dangerous, it likewise makes the receiver more dangerous. A market has two sides, supply and demand; without both, the market collapses. The senders of child pornography supply it; the demanders receive it. The guideline is acknowl-

edged to treat both sides of the market symmetrically when any method of transmission other than the Internet is used; it would make no sense to treat them differently when the more ominous method is used.

*Id.* at 842. This rationale rings just as true in the present case. Dotson used his computer to access a predisposed Internet news group, where he found the advertisement and initiated a course of correspondence that culminated in his decision to place a special order for a customized pornographic video involving two young girls engaged in a variety of illegal sexual acts that Dotson specifically requested that they be made to undertake. As the *Richardson* court acknowledged, the very nature of the Internet provides an "ominous method" for anonymous predatory criminal conduct. *Id.* Under the guideline, those who seek out and respond to notice and advertisement of such materials are as culpable as those who initially send out the notice and advertisement. Thus, we conclude that the district court acted appropriately in applying section 2G2.2(b)(5) to increase the punishment for Dotson's crime.

Dotson also argues that the Sentencing Commission exceeded its authority in implementing the enhancement under U.S.S.G. § 2G2.2(b)(5), Congress having directed that only two statutes, neither of which is involved in this case, result in a two-level enhancement for the use of a computer. However, the government notes that the offense of conviction, 18 U.S.C.A. § 2252A, could not have formed part of the legislative history behind the enhancement because it had yet to be enacted when the enhancement was devised. Moreover, Congress has afforded considerable discretion to the Commission in formulating and revising the guidelines. *See Mistretta v. United States*, 488 U.S. 361, 377-78 (1989). Specifically included is the power to identify "circumstances under which the offense was committed which mitigate or aggravate [its] seriousness." *See* 28 U.S.C.A. § 994(c)(2) (West 1993 & Supp. 2002). Section 2G2.2(b)(5) falls within that grant of discretionary authority and, as explained above, the enhancement itself is reasonable in that it focuses on the use of computers, which provide criminals with an effective method of communicating with a broad audience in connection with the specific crime of conviction.

B.

Dotson next argues that the court abused its discretion in providing for the possible use of physiological testing by devices such as a polygraph or penile plethysmograph test in conjunction with his treatment.

District courts have broad latitude to impose conditions on supervised release. *Crandon*, 173 F.3d at 127. In addition to a number of mandatory conditions, *see* 18 U.S.C.A. § 3583(d) (West 2000 & Supp. 2002), the sentencing court may impose any other condition it considers to be appropriate, as long as that condition is "reasonably related" to statutory factors referred to in § 3583(d)(1). These factors are: "the nature and circumstances of the offenses and the history and characteristics of the defendant," 18 U.S.C.A. § 3553(a)(1) (West 2000); providing adequate deterrence, *see* § 3553(a)(2)(B); protecting the public from further crimes, *see* § 3553(a)(2)(C); and providing the defendant with training, medical care, or treatment, *see* § 3553(a)(2)(D). Conditions imposed in connection with these factors must "involve[ ] no greater deprivation of liberty than is reasonably necessary" for achieving the specified goals, 18 U.S.C.A. § 3583(d)(2), and they must be consistent with Sentencing Commission policy statements on supervised release, *see* § 3583(d)(3).

Because we have already noted that the plethysmograph test is "useful for treatment of sex offenders," *United States v. Powers*, 59 F.3d 1460, 1471 (4th Cir. 1995), the district court clearly acted within its discretion in imposing this condition on Dotson's release. The test also meets the "reasonably related" requirement in that it is aimed at providing Dotson with treatment, fostering deterrence, and protecting the public. *See Berthiaume v. Caron*, 142 F.3d 12, 17 (1st Cir. 1998) (describing this usage of the plethysmograph as "an accepted tool" and "a standard practice" in the field of sex offender treatment); *see also Walrath v. United States*, 830 F.Supp. 444 (N.D. Ill. 1993), *aff'd*, 35 F.3d 277 (7th Cir. 1994) (holding that the use of the plethysmograph for treatment as a condition of parole is valid).

As for the polygraph test, it is undisputed such evidence is inadmissible in nearly every circumstance at trial. *See, e.g.*, *United States v. Porter*, 821 F.2d 968, 974 (4th Cir. 1987); *United States v. Brevard*, 739 F.2d 180, 182 (4th Cir. 1984). Obviously, however, evidentiary

cases do not govern our evaluation of the use of polygraphs in connection with the treatment of an offender. The use of a polygraph test here is not aimed at gathering evidence to inculpate or exculpate Dotson. Rather, the test is contemplated as a potential treatment tool upon Dotson's release from prison — as witnessed by the district court's direction that the results of any polygraph testing not be made public. *See* J.A. 53; *see also United States v. Zinn*, ___ F.3d ___, 2003 WL 328925, at *6 (11th Cir. Feb. 14, 2003) (holding that the court did not err in requiring the defendant to submit to polygraph testing as a condition of his supervised release); *United States v. Lee*, 315 F.3d 206, 217 (3d Cir. 2003) (polygraphs may be imposed for treatment and deterrence purposes); *cf. United States v. Sines*, 303 F.3d 793, 799-800 (7th Cir. 2002) (district court may delegate to a probation officer details of treatment for an offender, including the use of a polygraph test).

For these reasons, we agree that the court acted within its discretion in providing for the possible use of the plethysmograph and polygraph tests in connection with Dotson's treatment as special conditions of his release.

### III.

For the reasons set forth above, we affirm.

*AFFIRMED*