**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

PHILIP A. HOLMAN,
        *Defendant-Appellant.*

No. 07-4131

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

PHILIP A. HOLMAN,
        *Defendant-Appellant.*

No. 07-4132

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry Coke Morgan, Jr., Senior District Judge.
(2:93-cr-00036-JCC; 2:95-cr-00198-HCM)

Argued: March 21, 2008

Decided: July 7, 2008

Before MOTZ, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Motz and Judge Duncan joined.

**COUNSEL**

**ARGUED:** Joseph Barry McCracken, Norfolk, Virginia, for Appellant. Laura Marie Everhart, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

After Philip Holman was released from prison and began serving his term of supervised release, the district court at the government's request imposed as a special condition of supervised release a requirement that Holman participate in mental health treatment and take all prescribed medication, including intramuscular injections of an antipsychotic drug. Holman appeals, arguing that requiring him to submit to the intramuscular injections violates his constitutionally protected liberty interest in "avoiding the unwanted administration of antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 221 (1990). We find no error, and we therefore affirm the district court's imposition of the special condition of supervised release.

I.

Holman pleaded guilty to various drugs and weapons charges in 1993 and 1996. Shortly after he began serving the sentence on the 1993 charges, Holman began exhibiting symptoms of serious mental illness, and he was eventually diagnosed as suffering from schizoaffective disorder, bipolar type.

During his time in prison, Holman cycled between cooperating with his psychiatric treatment plan and voluntarily taking the prescribed oral antipsychotic medication and refusing to cooperate with treatment or take his medication. These periods of refusal led to a recurrence of his symptoms and manic or depressive psychotic epi-

sodes. In 1997, after Holman again began refusing to take his medication, he was involuntarily committed to a psychiatric prison facility.

In July 2003, after several months of Holman refusing then agreeing then refusing to take the prescribed oral medication, prison officials convened an "Involuntary Medication Hearing" and received permission to administer antipsychotic medication to Holman despite his objections. By late 2003, Holman's mental condition was deteriorating. He was again refusing to take his medication, and he began threatening to kill himself and prison staff members. On January 14, 2004, "[a]fter a staff show of force," Holman "reluctantly accepted" an injection of long-acting risperidone, an antipsychotic medication. J.A. 179. Holman continued to receive injections of risperidone, along with other oral medications, until September 2004, when he was released after serving his prison term.

When he was released, Holman's prison psychiatrist provided him with a supply of oral risperidone. In a memo to Holman outlining his condition and treatment needs, the psychiatrist noted that future treatment decisions would be made by local mental health providers, but recommended that Holman continue the risperidone injections, "to prevent [Holman] from succumbing to the temptation to stop taking the tablets." J.A. 174. Upon release from prison, Holman received psychiatric care through the Community Services Board in Chesapeake, Virginia. His treating psychiatrist continued Holman on the oral risperidone, but at higher dosage than had been prescribed while Holman was in prison.

The conditions of supervised release imposed when Holman was sentenced did not require him to seek mental health treatment. In November 2004, Holman's probation officer filed a petition with the district court requesting a hearing to determine whether the conditions of supervised release should be modified to include a requirement that Holman receive mental health care and take all prescribed medication. The district court held the hearing in February 2005 and, in March 2005, issued an order imposing as a special condition of supervised release a requirement that Holman comply with his mental health treatment plan and take all prescribed medication. The order specifically required the use of intramuscular injections of risperidone, as recommended by Holman's prison psychiatrist.

In late February 2005, after the hearing but before the issuance of the district court's order, Holman disappeared. He left his home without his medication, had no contact with his family, and missed several appointments with his probation officer. Holman was arrested several weeks later, after he was found wandering aimlessly and in a partially catatonic state. Several months later, after treatment and medication had stabilized his condition and he was deemed competent, Holman was brought before the district court to answer for the violation of the terms of his supervised release. The district court sentenced Holman to eleven months imprisonment, to be followed by a forty-nine-month term of supervised release. The district court re-imposed all prior special conditions of supervised release, including the requirement that Holman receive intramuscular injections of risperidone.

By June 2006, just a few months after he was released from prison, Holman had again violated the terms of his supervised release by refusing to take his prescribed medication. His probation officer filed another petition alleging a violation of the conditions of supervised release, and Holman was arrested. The court found Holman to be incompetent and he was committed for evaluation and treatment. In January 2007, after treatment and medication restored him to competency, Holman appeared before the district court. The district court sentenced him to twelve months imprisonment to be followed by thirty-seven months of supervised release with the same conditions previously imposed.

Holman now appeals the sentence, challenging the special condition of supervised release imposed by the district court.[1] While Holman does not object to the requirement that he receive mental health

---

[1] In *United States v. Johnson*, 138 F.3d 115 (4th Cir. 1998), we held that when a condition of supervised release was imposed as part of the defendant's original sentence, the condition could not be challenged in an appeal from an order revoking the defendant's supervised release, but must instead be challenged on direct appeal from the original conviction and sentence. *See id.* at 117-18. In the present case, the challenged special condition was not a part of Holman's original sentence, and the special condition was imposed anew in 2005 and 2006 after Holman violated the conditions of supervised release. Holman's appeal is therefore timely.

treatment, nor to the general requirement that he take antipsychotic medication, he does object to the requirement that he take antipsychotic drugs by way of intramuscular injections. Antipsychotic medications generally have the potential for severe or even fatal side effects[2]; for Holman, the side effects of the injectable medications are more significant and unpleasant than those of oral medications. Holman argues that the government failed to establish that the injections were medically necessary and that no less intrusive alternative would suffice, and Holman therefore argues that the special condition of supervised release imposed by the district court violates his constitutionally protected liberty interest in refusing the unwanted injections.

## II.

District courts are required to impose certain conditions with every term of supervised release and are permitted to impose other appropriate conditions. *See* 18 U.S.C.A. § 3583(d) (West 2000 & Supp. 2008). A district court may impose any appropriate non-mandatory condition of supervised release if the condition

(1) is reasonably related to the factors set forth in [18 U.S.C.A. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

---

[2]The Supreme Court has explained the side effects of antipsychotic medications:

The purpose of the drugs is to alter the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in his or her cognitive processes. . . . While the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects. One such side effect . . . is acute dystonia, a severe involuntary spasm of the upper body, tongue, throat, or eyes. . . . Other side effects include akathesia (motor restlessness, often characterized by an inability to sit still); neuroleptic malignant syndrome (a relatively rare condition which can lead to death from cardiac dysfunction); and tardive dyskinesia, perhaps the most discussed side effect of antipsychotic drugs. . . . Tardive dyskinesia is a neurological disorder, irreversible in some cases, that is characterized by involuntary, uncontrollable movements of various muscles, especially around the face.

*Washington v. Harper*, 494 U.S. 210, 229-30 (1990).

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

*Id.* The § 3553(a) factors referred to in subsection (d)(1) are: the defendant's history and characteristics, and the nature and circumstances of the offense for which the defendant was convicted; *see* 18 U.S.C.A. § 3553(a)(1) (West 2000 & Supp. 2008); the need for adequate deterrence, *see id.* § (a)(2)(B); the need to protect the public from further crimes, *id.* § (a)(2)(C); and the need to provide the defendant in the most effective manner with necessary medical care, vocational or educational training, or other correctional treatment, *see id.* § (a)(2)(D); *see also United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003).

District courts "have broad latitude" with regard to special conditions of supervised release, and we review the court's decision to impose a condition of supervised release for an abuse of discretion. *See Dotson*, 324 F.3d at 259, 260.

The government argues that the special condition imposed by the district court satisfies the statutory requirements set forth in § 3583(d). The government notes that Holman's history establishes that he suffers from a mental illness that is well controlled with medication. When Holman is off his medication, however, he may exhibit violent behavior towards others and put his own health and safety at risk. The government therefore contends that the medication requirement is reasonably related to the need to protect the public and the need to effectively provide Holman with the proper medical care. And because Holman has consistently demonstrated his inability to comply with a treatment plan centered on oral medication, the requirement that he take the medication by way of injection is the least intrusive way of furthering these important governmental purposes. The government therefore contends that the district court properly required as a special condition of supervised release that Holman receive injections of prescribed antipsychotic medication.

Holman, however, suggests that our inquiry should not be limited to an application of § 3583(d)'s requirements that the special condition be reasonably related to a sentencing purpose and be no greater a deprivation of liberty than is reasonably necessary to further that purpose. The special condition at issue in this case implicates Holman's fundamental liberty interest in refusing to take medications that substantially change his personality and carry a significant risk of dangerous side-effects. Holman thus contends that the nature of the interest affected by the special condition requires us to scrutinize with more care the district court's decision to impose the condition.

## A.

The Supreme Court has made it clear that under the Due Process Clauses of the Fifth and Fourteenth Amendments, individuals (including pre-trial detainees and convicted criminals) have "a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs—an interest that only an essential or overriding [governmental] interest might overcome." *Sell v. United States*, 539 U.S. 166, 178-79 (2003) (internal quotation marks omitted); *see also Washington v. Harper*, 494 U.S. 210, 221-22 (1990) ("We have no doubt that . . . respondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."). Among the governmental interests that in a given case may be sufficiently important to support an order for involuntary medication are the need to protect the individual and others from the individual's potentially dangerous behavior, *see Riggins v. Nevada*, 504 U.S. 127, 134-35 (1992); *Harper*, 494 U.S. at 225-26; and the government's interest in rendering a criminal defendant competent to stand trial, *see Sell*, 539 U.S. at 179-80.

In general terms, an involuntary-medication order is constitutionally impermissible "absent a finding of overriding justification and a determination of medical appropriateness." *Riggins*, 504 U.S. at 135. The showing necessary to satisfy these requirements, however differs depending on the context and reasons underlying the order. *See United States v. Baldovinos*, 434 F.3d 233, 240-41 (4th Cir. 2006); *United States v. Evans*, 404 F.3d 227, 235 n.3 (4th Cir. 2005). If the involuntary-medication order is premised on the individual's danger-

ousness (to himself or the public), the government can satisfy the due-process inquiry by demonstrating that "treatment with antipsychotic medication [is] medically appropriate and, considering less intrusive alternatives, essential for the sake of [the individual's] own safety or the safety of others." *Riggins*, 504 U.S. at 135; *see Harper*, 494 U.S. at 225-26. In cases where the order is not premised on the individual's dangerousness, however, the inquiry is governed by the analysis set forth in *Sell*. *See Baldovinos*, 434 F.3d at 240-41. In such a case, the government must demonstrate that, in light of the individual facts of the case, its interest in bringing the individual to trial is sufficiently important. *See Sell*, 539 U.S. at 180 ("Special circumstances may lessen the importance of [the interest in trying a defendant accused of a serious crime]. The defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill—and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime. . . . And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution."). The government must also establish that the involuntary-medication order will "*significantly further*" its interest, by demonstrating that "administration of the drugs is substantially likely to render the defendant competent to stand trial" but yet "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." *Id.* at 181.

The standards set forth by the Supreme Court for determining whether an involuntary medication order is constitutionally permissible—particularly as those standards were applied in *Sell*—arguably are more demanding (at least in formulation, if not application) than the statutory provisions generally governing conditions of supervised release. *Sell* requires such an order to significantly further a compelling governmental interest, while § 3583(d) requires only a reasonable relationship to one of several specified sentencing goals. Moreover, the statute seems to demand a looser fit between the special condition and the sentencing goal — § 3583(d)(2) requires only that the condition of supervised release be no more restrictive than *reasonably necessary* to further the sentencing goal, while *Sell*

requires that there be no less intrusive means of treatment that likely will achieve substantially the same results.

There is some question as to whether the *Harper-Riggins-Sell* constitutional analysis supplants or supplements the statutory requirements set forth in § 3583(d). *See United States v. Williams*, 356 F.3d 1045, 1056-57 (9th Cir. 2004) (applying § 3583(d) factors to review of involuntary medication order imposed as condition of supervised release, but requiring district court to make "explicit, specific finding[s]" based on evidence reflected in "a medically-informed record"); *United States v. Schave*, 186 F.3d 839, 843 (7th Cir. 1999) ("[A] court will not strike down conditions of [supervised] release, even if they implicate fundamental rights, if such conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism."); *United States v. Wilson*, 154 F.3d 658, 667 (7th Cir. 1998) (applying § 3853(d) factors and concluding that the district court did not abuse its discretion by requiring as a condition of supervised release that the defendant participate in a mental health treatment program and take all required medications). *But see United States v. Myers*, 426 F.3d 117, 125-26 (2d Cir. 2005) (explaining that in cases where the challenged condition of supervised release implicates "a fundamental liberty interest protected by due process," the reviewing court's application of the § 3583(d) factors "must reflect the heightened constitutional concerns. If the liberty interest at stake is fundamental, a deprivation of that liberty is 'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest."). In this case, however, there is no need for us to answer that question, because the special condition of supervised release was properly imposed in this case even when analyzed under the framework set out in *Harper* and *Sell*.

### B.

The district court imposed the involuntary-medication condition in order to protect Holman himself and to protect the general public, and the record clearly supports the district court's determination that Holman is a danger to himself and others when off his medication. Holman had several episodes of violent behavior while he was in prison, episodes that happened only during periods when he refused to take his medication. Holman made threats against his prison psychiatrist

and other prison staffers and threatened to commit suicide, actions that again happened only during periods when he was refusing to take the prescribed oral medication. The first time after his release from prison that Holman quit taking his medication and vanished, he was found several weeks later, "disoriented, disheveled, and partially catatonic," J.A. 197, which further demonstrates the danger Holman poses to himself when off his medication. The government's interest in protecting Holman from himself and protecting the general public from Holman are essential or overriding interests sufficient to support an order requiring the involuntary administration of antipsychotic drugs. *See Sell*, 539 U.S. at 179; *Harper*, 494 U.S. at 225-26.

The evidence establishing Holman's dangerousness also establishes that the district court's order was narrowly tailored to the circumstances of this case. As the district court noted, Holman became a danger to himself and others when he was off his medication, and injections of long-lasting antipsychotic drugs provide the only means of insuring that Holman takes his medication. The special condition of supervised release thus significantly furthers and is clearly necessary to further the government's interests in protecting Holman and the public. *See Sell*, 539 U.S. at 181 (explaining that an order to involuntarily medicate an individual must "*significantly further*" overriding governmental interests and must be "*necessary* to further those interests" and that involuntary medication may be necessary if "any alternative, less intrusive treatments are unlikely to achieve substantially the same results").

Finally, the record establishes that the involuntary-medication requirement is medically appropriate. Prison officials generally were required to use injections to stabilize Holman's condition once he quit taking his oral medications, and Holman's prison psychiatrist believed that the long-lasting injections were his best treatment option, in part because the injections helped prevent Holman from "succumbing to the temptation" to stop taking medication. J.A. 174. Given Holman's "absolute dependence on medication to maintain his mental health," J.A. 80, and his inability to comply with his treatment plan when on oral medication, we have no difficulty concluding that the special condition requiring Holman to take the required antipsychotic drugs by way of intramuscular injections was medically necessary.

We therefore conclude the district court's decision to require intramuscular injections of antipsychotic medications as a special condition of supervised release was consistent with the due-process requirements set out by the Supreme Court in *Harper* and *Sell*. And because the due-process standards are, if anything, more demanding than the statutory requirements, it follows that the special condition likewise complies with § 3583(d). The special condition is reasonably related to the need to protect the public and the need to provide the defendant with appropriate medical care, *see* 18 U.S.C.A. § 3583(d); *Dotson*, 324 F.3d at 260, and the involuntary medication order involves no greater deprivation of liberty than is reasonably necessary to further these governmental interests.

### III.

Accordingly, for the foregoing reasons, we hereby affirm the district court's decision to require intramuscular injections of antipsychotic medications as a special condition of Holman's term of supervised release.

*AFFIRMED*