<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-5003**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

CHAD TALADA,

        Defendant – Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Thomas E. Johnston, District Judge. (5:08-cr-00269-1)

Submitted: May 14, 2010        Decided: June 2, 2010

Before KING, SHEDD, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, Edward H. Weis, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Charles T. Miller, United States Attorney, Blaire L. Malkin, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Chad Talada, a convicted sex offender, was charged with one count of failing to update his registration as a sex offender under the criminal provision of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250 (2006). Pursuant to a written plea agreement, Talada pled guilty to the charged offense, reserving his right to appeal the district court's denial of his motion to dismiss the indictment. He was sentenced to twenty-four months' imprisonment and a seventy-year term of supervised release. Talada now appeals, and for the following reasons, we affirm.

On appeal Talada raises three issues. First, Talada argues the criminal provision of SORNA, 18 U.S.C. § 2250, exceeds Congress's power under the Commerce Clause, to the extent that it limits his right to travel. Second, he claims the Attorney General's issuance of regulations making the criminal provision of SORNA retroactive violates the Administrative Procedure Act ("APA"), specifically 5 U.S.C. § 553 (2006). Last, Talada maintains the district court abused its discretion by requiring Talada, as a condition of supervised release, to submit to polygraph examinations without ordering that the results not be made public.

As Talada readily concedes, the issue of whether the Attorney General's issuance of the regulations making § 2250

2

retroactive violates the APA has been addressed by this court in United States v. Gould, 568 F.3d 459, 470 (4th Cir. 2009), cert. denied, 130 S. Ct. 1686 (2010). In Gould, we held that "the Attorney General had good cause to invoke the exception to providing the 30-day notice" required by § 553, and therefore the issuance of the regulations did not violate the APA. Id. Accordingly, Talada's argument is foreclosed by our holding in Gould. See Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 n.2 (4th Cir. 2002) ("[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that." (internal quotation marks omitted)).

Talada also argues that "the only 'hook' invoking federal jurisdiction is his movement from New York to West Virginia," and the only "criminal act triggering liability is the failure to comply with state registration regimes, none of which, at the time of Talada's arrest, fully complied with the requirements of SORNA." Thus, Talada concludes that the criminal sanction under SORNA, "with such a tangential relationship to legitimate federal interests, violates Congress's authority under the Commerce Clause, as circumscribed by [his] right to interstate travel."

In Gould, this court held that § 2250(a), which requires that a sex offender must have been convicted of a

3

qualifying sex offense and, after conviction, traveled to another state and failed to register or maintain his registration, does not violate the Commerce Clause. Gould, 568 F.3d at 471-75. Talada asserts that Gould is not controlling because "the defendant in Gould raised the bare issue of whether the Commerce Clause allowed for the regulation of 'purely local intrastate activity that has nothing to do with commerce or any type of economic enterprise,'" and that Gould, in challenging SORNA, did not raise the issue of whether Congress's authority under the Commerce Clause impinged on the defendant's fundamental right to travel. Talada states that Gould was convicted under § 2250(a)(2)(A), criminalizing the failure to register by one who has been convicted as a sex offender in the District of Columbia, and not under the same provision of § 2250 as Talada, i.e., § 2250(a)(2)(B), criminalizing the failure to register by one who "travels in interstate or foreign commerce." According to Talada, the Commerce Clause issue raised by Gould's conviction, therefore, is distinct from the issue he raises.

First, despite Talada's contentions, this court explained in a footnote in Gould that while § 2250(a) "justifies federal jurisdiction for a SORNA failure-to-register offense also by reason of a defendant's conviction for a sex offense under federal or District of Columbia law," and that Gould satisfied this basis for jurisdiction, this court "need not

4

address it because Gould traveled in interstate commerce." Gould, 568 F.3d at 470 n.5. Second, we expressly discussed in Gould the interaction of travel and Congress's power under the Commerce Clause, explaining that "Congress . . . has the authority to regulate persons in interstate commerce, especially persons who move from the State of conviction to another State and there fail to register, as they use instrumentalities of interstate commerce." Id. at 471 (internal quotation marks omitted). Moreover, SORNA does not criminalize a sexual offender simply for engaging in interstate travel. Rather, "Congress, motivated by a desire to prevent sex offenders from traveling among the States to avoid state registration, used its commerce power to enact a national program mandating stronger and the more comprehensive registration system, as contained in SORNA." Id. at 474. Thus, although a SORNA violation under § 2250(a)(2)(B) requires interstate travel, it also requires "the act of failing to register." Id. at 470. As a result, Talada's argument that Gould does not control this issue is without merit.

Finally, Talada argues that the district court abused its discretion by imposing a condition of supervised release requiring him to submit to polygraph examinations as part of a sex offender treatment program without requiring that the results of those examinations remain confidential. "District

5

courts have broad latitude with regard to special conditions of supervised release, and we review the [district] court's decision to impose a condition of supervised release for an abuse of discretion." United States v. Holman, 532 F.3d 284, 288 (4th Cir. 2008) (internal quotation marks omitted).

This court specifically addressed the use of polygraph tests as a condition of supervised release in United States v. Dotson, 324 F.3d 256, 261 (4th Cir. 2003). In Dotson, we upheld the use of polygraph testing as a condition of supervised release because the testing was to be used "as a potential treatment tool upon Dotson's release from prison," and not to "gather[] evidence to inculpate or exculpate Dotson." Id. While Talada concedes that imposition of the condition is generally reasonable and not an abuse of discretion, he notes that, in Dotson, the district court had taken the added measure of directing that the results of any polygraph testing not be made public. Talada argues that the potential for disclosure in his case, where no such specification was made, infringes on his Fifth Amendment right to be free from self-incrimination.

Here, the district court made clear at sentencing, like in Dotson, that "polygraph examinations are a part of . . . an overall program of treatment and protection of the public," and that they are "a tool for supervision of the defendant for an overall treatment scheme and program." The court further

6

noted that "[w]e all know they are not admissible," and that the use of polygraphs as a special condition for supervised release was "appropriate as set forth in the standard conditions. . . ." To the extent Talada suggests that potential disclosure of the results of the testing could infringe on his Fifth Amendment right to be free from self-incrimination, such a claim at this juncture is merely speculative. See United States v. Zinn, 321 F.3d 1084, 1092 (11th Cir. 2003) ("If and when Appellant is forced to testify over his valid claim of privilege, he may raise a Fifth Amendment challenge. In the meantime, we can only decide whether requiring polygraph testing as a condition of supervised release generally violates the Fifth Amendment so as to amount to plain error. We hold it does not.").

Accordingly, we affirm Talada's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED