**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4470**

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

       v.

AMAR ENDRIS,

              Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:15-cr-00044-LMB-1)

Argued:  September 23, 2016          Decided:  October 18, 2016

Before TRAXLER, SHEDD, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Nicholas John Xenakis, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jack Morgan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Geremy C. Kamens, Acting Federal Public Defender, Kevin R. Brehm, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Dana J. Boente, United States Attorney, John T. Gibbs, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Amar Endris of one count of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). Endris appeals his conviction and sentence. For the following reasons, we affirm.

I.

In early 2014, the FBI began investigating Amar Endris for potential criminal offenses.[1] As part of its investigation, the FBI used a confidential informant, Dylan Smith,[2] to make contact with him. During the investigation, Endris remarked to Smith that he wanted to find a firearm that the Government could not trace; in response, the FBI instructed Smith to offer Endris a gun from a man named "Paul." Pursuant to these instructions, Smith told Endris that he could buy a gun from "Paul" for $300. Smith also told Endris that the serial number was scratched off and the gun was thus illegal to possess. Endris responded, "we'll talk, don't, don't tell me on the phone we'll talk about it when, we'll talk about it."[3] (J.A. 281). Endris asked if he

---

[1] Because the jury found Endris guilty, "we recite the facts . . . in the light most favorable to the government." United States v. McNeal, 818 F.3d 141, 146 n.3 (4th Cir. 2016).

[2] Dylan Smith is a pseudonym. Smith testified under this name at trial.

[3] All recordings and texts are presented as they were at trial.

and Smith could meet to discuss the purchase. During that ensuing discussion, Endris told Smith he was willing to buy the gun but was worried about the price. He later texted Smith to say that he did not have $300, but to "[t]ell Paul to save it doe I we'll get it some other time." (J.A. 126).

In early October, Endris informed Smith that he was leaving the country with family to go to Ethiopia.[4] For the next two months, during which Endris told Smith he was in Ethiopia, there is no evidence that Endris attempted to legally purchase a firearm, and Smith made no mention of the gun from "Paul."

On December 4, Endris sent Smith a Facebook message, asking him, "Paul steel got the 17?" (J.A. 129). Three days later, Endris sent another message asking, "Am good u talk to poul?" (J.A. 130-31). Endris then texted Smith several days later, telling him he was back in the country and asking if Smith could "please hit up Paul ASAP" so Endris could get the gun "this week I needit." (J.A. 132). On December 15, Smith told Endris that Paul still had the gun and reminded him that the serial number was scratched off. Endris replied, "no problem," and "I want it tomorrow or, or Wednesday." (J.A. 306). Endris increased his

---

[4] In fact, Endris remained in northern Virginia during this time.

urgency the next day, saying that he "need dat tmrw" and asked if Paul had ammunition for the weapon. (J.A. 133).

Smith and Endris met "Paul" on December 17 in a shopping center parking lot. Endris brought $300 with him and, after some haggling, purchased a Glock handgun with a scratched off serial number. After taking possession of the gun Endris was, in Smith's opinion, as happy as a "child on Christmas," (J.A. 137), using a flashlight to examine it and asking if the gun "got bodies on it," (J.A. 83). Endris never asked for a receipt and left the transaction with the gun.

The FBI promptly arrested Endris, and the Government charged him with one count of possession of a firearm with an obliterated serial number, in violation of § 922(k). Before trial, Endris moved in limine to keep the Government from introducing certain recordings that occurred prior to Smith offering Endris the gun from "Paul." The district court denied the motion, concluding that, because Endris intended to raise an entrapment defense, the recordings were necessary to prove predisposition.

Following a two-day trial, the jury convicted Endris of the § 922(k) violation. While awaiting sentencing, Endris was released to his parents' care. This arrangement ended when his parents contacted the Probation Office and said they were

4

worried because they found pictures on Endris' phone of Endris posing with guns.

At sentencing, the district court expressed great concern regarding Endris' post-conviction activities. Accordingly, after sentencing Endris to 30 months imprisonment, the court announced special conditions for his supervised release. Condition 4 provides that "[t]he defendant shall not utilize any computer or internet services to access information regarding firearms, soldiers of fortune, or any type of violence." (J.A. 539).

## II.

On appeal, Endris challenges: (1) the admission of three recordings under Rule 404(b); and (2) Condition 4 of his supervised release.[5] We address these issues in turn.

## A.

Rule 404 generally prohibits evidence of other crimes or bad acts to prove the defendant's character and conduct in accordance with his character. See Fed. R. Evid. 404(b)(1). Such

---

[5] Endris also challenges the sufficiency of the evidence against him, arguing that the Government failed to prove predisposition. When, as here, entrapment is submitted to the jury, Endris' guilty verdict "comprehends a finding of no entrapment" and we can "overturn this determination only if no rational trier of fact could have found predisposition beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution." United States v. Jones, 976 F.2d 176, 180 (4th Cir. 1992). Applying this standard, we have reviewed this claim and find it to be without merit because a rational juror could have found predisposition.

evidence, however, may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "Rule 404(b) is viewed as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Young, 248 F.3d 260, 271 (4th Cir. 2001) (internal quotation marks omitted). "To be admissible under Rule 404(b), evidence must be (1) relevant to an issue other than character; (2) necessary; and (3) reliable." United States v. Siegel, 536 F.3d 306, 317 (4th Cir. 2008) (internal quotation marks omitted). Additionally, evidence should be excluded under Rule 404(b) if its probative value is substantially outweighed by its unfair prejudice to the defendant. United States v. Johnson, 617 F.3d 286, 296–97 (4th Cir. 2010). We review the district court's admission of evidence under Rule 404(b) for abuse of discretion. United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997).

As noted, Endris moved in limine to suppress three audio recordings of conversations that occurred prior to Smith mentioning the gun with the obliterated serial number. The conversations occurred on August 5, August 19, and August 26.

On August 5, Endris told Smith about a recent encounter with an acquaintance:

6

Endris: Remember that Spanish dude from the first time? . . . I went up to him, uh. I was, I was chillin' with him on, on Sunday, He, and uh, uh, he, I, I was talking to him. I told you his people are like the cartel and stuff. So I asked him, um, do you know anybody with guns and stuff. He's like yah but he said for uh new ones it's gonna be expensive. Clean ones, but for dirty, dirty ones it will be cheaper.

Smith: Yeah, of course dirty ones will be cheaper.

(J.A. 594).

Next, on August 19, Endris and Smith discussed the possibility of using a gun to rob Endris' khat dealer:

Endris: You wanna try and do it?

Smith: I mean if you make up a plan and it's straight enough my brother.

Endris: It is. It's good.

Smith: I might be down.

Endris: Akh, here's the thing. You got to. I won't

Smith: You just got to make sure the plan is

Endris: What do you think about ski masks or not? What if, what if we go there, like, the first thing we do is have ski masks and go in there? That's hot?

(J.A. 597).

Finally, on August 26, Endris discussed wanting to find someone to buy a gun for him:

Endris: But what I want to do, I want to find somebody that's 21 that I trust and shit that's cool and I wanna give them the money and I wanna go to the store with them and I want them to buy it.

(J.A. 599).

7

The district court denied Endris' motion, ruling that because Endris intended to raise an entrapment defense, the conversations were "necessary" to show that Endris "had a predisposition to obtain an unlawful weapon." (J.A. 15).

In United States v. McLaurin, 764 F.3d 372, 380 (4th Cir. 2014), we held that "there is no doubt that proving predisposition is one of the purposes for which bad-act evidence may be admissible." Because predisposition was a "broad concept," a "broad swath of evidence, including aspects of the defendant's character and criminal past, is relevant to proving" it. Id. at 381. Thus, when a defendant raises entrapment, "'prior bad acts relevant to a defendant's predisposition to commit a crime are highly probative and can overcome the Rule 404(b) bar.'" Id. (quoting United States v. Van Horn, 277 F.3d 48, 57 (1st Cir. 2002). To be admissible under Rule 404(b) to prove predisposition, the past conduct need not be identical to the crime charged. Rather, the conduct need only be "similar enough and close enough in time to be relevant to the matter at issue. Id. at 382 (internal quotation marks omitted).

Applying McLaurin, we find no abuse of discretion. The conversations were offered for the permissible purpose of predisposition and were necessary to offset Endris' entrapment defense. Moreover, the August 5th and August 26th conversations relate to Endris' continuing efforts to obtain a firearm

illegally, while the August 19th conversation shows that Endris had a plausible use for an untraceable firearm.[6]

We also find that the probative value of the conversations is not substantially outweighed by the risk of unfair prejudice. The evidence is prejudicial to Endris' entrapment defense, "just as all evidence suggesting guilt is prejudicial to a defendant," United States v. Williams, 445 F.3d 724, 730 (4th Cir. 2006), but "[t]hat kind of general prejudice . . . is not enough to warrant exclusion of otherwise relevant, admissible evidence," Siegel, 536 F.3d at 319.

B.

Endris also challenges Condition 4 of his supervised release. We review the imposition of a supervised release condition for abuse of discretion. United States v. Holman, 532 F.3d 284, 288 (4th Cir. 2008). After Endris' conviction, he was remanded into his parents' custody pending sentencing. During the time between conviction and sentence, his parents contacted the Probation Office and asked that they take Endris into custody because of disturbing images they discovered on his phone: photographs of him posing with guns. In addition, before

---

[6] While these conversations are admissible individually, their admissibility is underscored when viewed cumulatively. See Bourjaily v. United States, 483 U.S. 171, 179-80 (1987) ("The sum of an evidentiary presentation may well be greater than its constituent parts.").

9

sentencing, a neuropsychological evaluation concluded that Endris has Autism Spectrum Disorder.[7]

In light of these post-conviction developments and the district court's concern that the "combination of severe mental illness and weapons is deadly," (J.A. 524), the court noted that Endris requires a "very strict regime of supervised release" to "avoid a tragedy down the road," (J.A. 525). To that end, the court explained that it was adding a "very strict restriction on" Endris' "use of computer and the Internet," and that Endris could have "absolutely no communication about guns or any type of weapon or any kind of soldiers of fortune, any kind of publication doing with — having to do with violence." (J.A. 527).[8] The court also prohibited Endris from possessing "any type of weapon, that includes knives, nunchucks, any kind of weapon at all." (J.A. 529). Endris indicated that he understood each of these conditions. Endris' attorney objected to the "violence" condition, and the court responded that it would leave the

---

[7] As explained in the evaluation, Autism Spectrum Disorder "consists of two major components: 1) Persistent deficits in social communication and social interaction across multiple context; and 2) Restricted, repetitive patterns of behavior, interests, or activities." (J.A. 558).

[8] The judgment sheet memorialized this condition as stating that Endris "shall not utilize any computer or internet services to access information regarding firearms, soldiers of fortune, or any type of violence." (J.A. 539).

condition because "if there's a problem . . . if the Probation Office thinks there's been a violation, we'll address it at that point, but I want it made clear that [Endris] needs to be extremely conservative as to what sites he decides to go visit when he's on the internet." (J.A. 533).

A district court is empowered to impose special conditions on supervised release so long as the condition is "reasonably related" to the 18 U.S.C. § 3553(a) factors and involves "no greater deprivation of liberty than is reasonably necessary." United States v. Armel, 585 F.3d 182, 186 (4th Cir. 2009) (internal quotation marks omitted). The relevant statutory factors include the following: the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to protect the public. 18 U.S.C. § 3583(d)(1). A district court has "broad latitude" in imposing special conditions. United States v. Dotson, 324 F.3d 256, 260 (4th Cir. 2003).

Under the particular facts of this case, we believe the restriction is reasonably related to at least two sentencing goals: protection of the public and the history and characteristics of the defendant. Endris argues that the reference to "violence" is overbroad and may land him in violation of his supervised release for any number of innocuous

11

activities. However, when read in the context of this case, we find the "violence" reference permissible.

"Conditions . . . may afford fair warning even if they are not precise to the point of pedantry. In short, conditions of [supervised release] can be written—and must be read—in a commonsense way." United States v. Paul, 274 F.3d 155, 166-67 (5th Cir. 2001) (internal quotation marks omitted). Here, the court made clear throughout sentencing its concern with Endris' fascination with guns and criminal plots and, in its reasoned view, determined that strict conditions were needed to protect not only the public but also Endris. The reference to "violence" is not free-standing; instead, it is tied to Endris' use of the internet and aimed at a very specific concern and potential harm: to prevent him from examining firearms and other weapons and soldiers of fortune. We therefore find the district court did not abuse its discretion in imposing Condition 4.

## III.

For the foregoing reasons, we affirm Endris' conviction and sentence.

AFFIRMED