**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4615

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CHARLES D. DOUGLAS, a/k/a Chris Davis,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville.  Norman K. Moon, Senior District Judge.  (3:16-cr-00017-NKM-1)

Argued:  January 24, 2017                    Decided:  March 9, 2017

Before NIEMEYER, TRAXLER, and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Traxler wrote the opinion, in which Judge Niemeyer and Judge Diaz joined.

**ARGUED**: Lisa M. Lorish, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Nancy Spodick Healey, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.  **ON BRIEF**: Larry W. Shelton, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  John P. Fishwick, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

TRAXLER, Circuit Judge:

Defendant-Appellant Charles Douglas pled guilty to failure to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a). He was sentenced to 15 months in prison, followed by five years of supervised release. On appeal, Douglas challenges the district court's imposition as a special condition of supervised release that he undergo a sex-offender evaluation. For the reasons that follow, we affirm.

I.

Douglas was convicted in Virginia state court of aggravated sexual abuse in August 1994, arising out of the sexual abuse of his stepdaughter from January 1990 through February 1992, when his victim was between 10 and 12 years old. Douglas was in his early thirties at the time. He was sentenced to ten years in prison, suspended to one year, plus two years of supervised probation. Douglas participated in a sex-offender treatment program in 1995, while he was on state probation. As a result of this state conviction, Douglas was also required to register as a sex offender for life. Douglas was arrested for failure to register as a sex offender in Virginia in December 1999, but the charges were dropped in April 2000. He last registered as a sex offender in October 2001, also in Virginia.

In 2002 and again in 2010, the Virginia State Police obtained arrest warrants for Douglas based on his failure to register as a sex offender. However, Douglas successfully evaded detection and arrest by assuming a false name and moving across state lines. He resided at various times in Washington, D.C., Kentucky, and Texas. In

2

October 2015, the United States Marshals Service attempted to arrest Douglas in Kentucky when they became aware that he was residing there with an adult woman and using the alias "Chris Davis." According to their interview of the woman, Douglas had no identification, no driver's license, and no birth certificate during his time in Kentucky, and he avoided working for employers that required identification or paperwork. When Douglas learned that the Marshals had come to his home to arrest him, he fled to Texas, where he was finally located and arrested in February 2016. He was indicted in the Western District of Kentucky for failure to register as a sex offender in violation of 18 U.S.C. § 2250(a), but consented to a transfer of his case to the Western District of Virginia, where he pled guilty without a plea agreement.

A presentence report ("PSR") was prepared setting forth a guideline imprisonment range of 15-21 months for the SORNA conviction, plus a statutorily required term of supervised release of not less than five years. In addition to the standard conditions of supervised release not challenged here, the PSR recommended that the court impose 16 special "Sex Offender Conditions" for supervised release provided for in Standing Order 2013-04 of the Western District of Virginia. Douglas objected to the imposition of 13 of the 16 conditions, arguing that his SORNA violation was not a sex offense and that his prior conviction for aggravated sexual assault in 1994 was too remote in time to justify the conditions.

The government agreed that Douglas's prior sex offense conviction was remote in time, but it argued that most of the sex-offender conditions were justified because "the remoteness of the defendant's sex offense is directly related to his efforts to avoid

apprehension" and "there is no way to know whether the defendant poses a recidivism risk." J.A. 18. At a minimum, the government requested that the district court require Douglas to submit to a sex-offender evaluation for the purpose of evaluating his risk to the public and determining what, if any, other treatment or conditions were warranted to serve the goals of sentencing.

The district court agreed. Douglas was sentenced to 15 months' imprisonment, plus five years of supervised release, with the special condition that he "submit to an evaluation by a qualified mental health professional, approved by the probation officer, who is experienced in the treatment of sexual offenders" and "take all medications reasonably related to his condition, complete all treatment recommendations, and abide by all rules, requirements, and conditions imposed by the treatment provider until discharged from treatment by the provider." J.A. 39. However, the district court declined to impose the remaining 12 sex-offender conditions recommended by the PSR and objected to by Douglas, opting instead to add the proviso that the probation officer could "request modifications to the conditions of supervision as determined by the assessment of [the] qualified mental health professional." J.A. 39.[1]

II.

---

[1] The district court also imposed the three sex-offense conditions recommended by the PSR that Douglas did not challenge. Specifically, Douglas is required to comply with all federal, state, and local registration requirements; he is prohibited from possessing, viewing, or using any child pornography materials, or knowingly entering or remaining in any location where such materials are present; and he is required to obtain his probation officer's approval of his residence and employment situation.

4

District courts are afforded "broad latitude to impose conditions on supervised release," which we review for abuse of discretion only. *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009). The court may impose any special condition that is "reasonably related" to the statutory sentencing factors referenced in 18 U.S.C. § 3583(d)(1), which include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); and (2) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3553(a)(2)(D); *see United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003). When imposing such conditions, the sentencing court must also ensure that the condition "involves no greater deprivation of liberty than is reasonably necessary" to serve these sentencing goals, 18 U.S.C. § 3583(d)(2), and that it "is consistent with any pertinent policy statements issued by the Sentencing Commission," 18 U.S.C. § 3583(d)(3); *see Dotson*, 324 F.3d at 260-61.

"Sex offender conditions of supervised release may be imposed, even at sentencing for crimes which are not sex crimes, if supported by § 3583(d)." *United States v. Bear*, 769 F.3d 1221, 1226 (10th Cir. 2014). The "particular restriction does not require an offense-specific nexus, but the sentencing court must adequately explain its decision and its reasons for imposing it." *United States v. Worley*, 685 F.3d 404, 407 (4th Cir. 2012) (internal citation and quotation marks omitted). The "court must demonstrate

5

that it considered the parties' arguments and had a reasoned basis for exercising its own legal decisionmaking authority." *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010) (internal quotation marks omitted). The "statement of reasons is important because it helps the sentencing process evolve, allows for meaningful appellate review, and promotes the perception of fair sentencing." *Id.* (internal citation, quotation marks and alterations omitted)).

A.

Douglas first contends that the district court committed procedural error by failing to adequately explain the basis for the condition requiring him to submit to a sex-offender evaluation. We disagree.

The district court record contains the information necessary for us to conduct a meaningful appellate review of the substantive reasonableness of the special condition. *See id.; Armel*, 585 F.3d at 186. At the sentencing hearing, the district court explicitly considered the remoteness of Douglas's prior sex offense, mindful that it should not "dwell" solely on the prior sex offense when evaluating whether the sex-offense conditions of supervised release were warranted. J.A. 49. However, the district court also shared the government's concern about the 14-plus years of evasive actions that Douglas took to avoid apprehension by law enforcement after he failed to register as a sex offender. The district court then stated that it had "considered the factors noted in 18 U.S.C. [§]3553(a): the defendant's history, characteristics, and the nature and circumstances of the offense, as well as the defendant's prior sex conviction," and proceeded to address the sex offender-conditions recommended in the PSR. J.A. 60. In

6

doing so, the district court explained that "the remoteness of [Douglas's] conviction[] is such that the Court should not assume that *all* of these [recommended] conditions, after an assessment, be complied with," and further noted that "otherwise, I think we would be going into punishing the defendant for the original offense rather than what he is here for today." J.A. 62 (emphasis added). Having reviewed all of the relevant considerations, the district court decided to only impose the limited condition that Douglas submit to a sex-offender evaluation, explaining that "[t]he probation officer will [then] know what the provider determined," J.A. 61-62, and "can look [for] guidance from the sex offender conditions" for further appropriate conditions. J.A. 62 (emphasis added). Accordingly, we are satisfied that the district court adequately considered the parties' arguments and that the district court's explanation, while brief, was sufficient to allow meaningful appellate review of the substantive reasonableness of the challenged condition.

B.

Douglas next contends that the district court abused its discretion in imposing the limited condition that he submit to a sex-offender evaluation, arguing that it is not reasonably related to the sentencing factors set forth in §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D), and that it involves a greater deprivation of liberty than reasonably necessary in violation of § 3583(d)(2). Specifically, Douglas argues that his 1994 sex-offense conviction is too remote, standing alone, to justify the need for a sex-offender evaluation. As further support, Douglas points out that he completed a sex-abuse treatment program in 1995 (during his two years of supervised probation for his prior sex offense), and that his criminal record has been clean since then (with the

7

exception of the 1999 arrest for failure to register and a 2002 arrest for driving while suspended).

As the district court recognized, "[p]rior sex offenses can be too temporally remote for sex-offender conditions of supervised release to be reasonably related to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or the defendant's educational, vocational, medical or other correctional needs." *Bear*, 769 F.3d at 1227. For example, we have held that a 12-year-old sex offense conviction, committed when the defendant was 21 years old, could not, "standing alone," justify special sex-offender conditions. *Worley*, 685 F.3d at 409. However, "[t]here is no bright-line rule for the outer limit of temporal remoteness, in part because district courts must consider more than just the age of a defendant's prior conviction." *Bear*, 769 F.3d at 1227. That is precisely what the district court properly did in this case.

While Douglas is correct that his SORNA violation is not a "sex offense" for purposes of imposing a term of supervised release under the Guidelines, *see* U.S.S.G. § 5D1.2, cmt. n.1, a SORNA violation is not wholly unrelated to the prior sex offense. Indeed, the very purpose of SORNA is to "protect the community from the risks posed by convicted sex offenders by requiring registration and then by providing notification" to the public. *United States v. Morales-Cruz*, 712 F.3d 71, 75 (1st Cir. 2013); *United States v. Under Seal*, 709 F.3d 257, 260 (4th Cir. 2013) (SORNA "was enacted 'to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators,'" [by] "'establish[ing] a comprehensive national system for

8

the registration of those offenders.'") (quoting 42 U.S.C. § 16901); *see also Smith v. Doe*, 538 U.S. 84, 99 (2003) (noting with respect to analogous requirements under Alaska law, that "[t]he purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender"). SORNA "'ma[d]e more uniform what had remained a patchwork of federal and 50 individual state registration systems, with loopholes and deficiencies that had resulted in an estimated 100,000 sex offenders becoming missing or lost." *Nichols v. United States*, 136 S. Ct. 1113, 1119 (2016) (internal quotation marks omitted). The "[r]egistration requirements [that] SORNA imposes are justified by the high recidivism rate for offenders." *Morales-Cruz*, 712 F.3d at 75; *Smith*, 538 U.S. at 105 ("[R]ecidivism is the statutory concern").

Here, the district court plainly did not ground the challenged condition that Douglas submit to a sex-offender evaluation solely upon Douglas's 1994 conviction. Rather, there are a number of other circumstances that weighed into and justified the district court's decision to impose the limited condition that Douglas submit to the evaluation as a first step to determining what, if any, additional treatment and conditions were warranted.

Douglas's prior sex offense involved the sexual assault of a prepubescent minor on multiple occasions over a two-year period -- when Douglas was in his thirties and the child was between 10 and 12 years old. Although he completed a sex-offender treatment program in 1995, while he was on state probation, Douglas ceased complying with his registration requirements in 2001, within five years of completing his state probation

term. He then took affirmative steps, including changing his name and moving regularly, to elude detection and arrest for over 14 years.

Consequently, Douglas did not merely fail to register under SORNA years after he had completed his sentence and treatment for his prior sex offense, and Douglas was not arrested within a short time after he violated his registration requirements. Instead, he "made a conscious choice to defeat th[e] purposes" of the sex-offender registration laws in several different jurisdictions for well over a decade. *Morales-Cruz*, 712 F.3d at 75. "These continuing failures certainly permit a rational inference that [Douglas] presented a recidivism risk and warranted deterrent punishment. His conduct undermined the efforts made by Congress in SORNA, and by the states in their statutes, to combat the risks of recidivism." *Id.*; *see also Bear*, 769 F.3d at 1228 (noting that defendant's "intervening sex offender registration conviction and current SORNA conviction, while fundamentally different than the underlying sex offenses, are not entirely unrelated and raise concerns that [defendant] may not comply with his ongoing SORNA obligations," justifying "special conditions related to rehabilitation and monitoring"); *cf. United States v. Springston*, 650 F.3d 1153, 1157 (8th Cir. 2011) (noting that special conditions requiring sex-offender treatment might "be justified in a case involving failure to register as a sex offender" for a remote prior conviction, "such as when there is reason to believe that the failure to register evidences recalcitrance and an ongoing proclivity to commit sexual crimes"), *vacated on other grounds*, 132 S. Ct. 1905 (2012).

We are also not persuaded by Douglas's argument that the condition was not justified because his criminal record has been clean since his prior offense (with the

exception of the 1999 arrest for failure to register and a 2002 arrest for driving while suspended), and that he only took steps to evade arrest during the ensuing 14 years to avoid paying $70,000 in child support, and not to victimize children in secret. Although there is nothing in the record to indicate that Douglas engaged in sexual offenses or inappropriate sexual behavior during the time that he was on the run, his arguments cannot be divorced from the fact that he was, in fact, on the run. He was taking affirmative steps to conceal his activities from law enforcement and simultaneously (and knowingly) violating state and federal registration laws, the very purpose of which are to alert the public to the presence of a convicted sex offender so as to deter sexually deviant and recidivist behavior and to prevent, particularly in the case of child sex offenders, offenses that often take place in secret. *Cf. Morales-Cruz*, 712 F.3d at 75 (holding that in light of defendant's "manifest lack of respect for the SORNA registration requirements, and the reasonable inference that his refusal to comply with these requirements poses a risk of recidivism, the district court's imposition of sex-offender treatment was reasonably related to [defendant's] present offense as well as to his criminal history").

Accordingly, we hold that the district court acted well within its broad discretion to impose the condition that Douglas submit to a sex-offender evaluation. The condition is reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant, including his prior sex offense and the extraordinary steps he took to avoid registration and apprehension by law enforcement for many years. The condition is also reasonably related to the need to protect the public from further crimes of the defendant, to provide the defendant with needed treatment in the most

11

effective manner, and to afford adequate deterrence to criminal conduct in the future.

Moreover, the district court's approach of imposing the single condition that Douglas submit to a sex-offender evaluation, and declining to impose additional conditions unless the evaluation were to indicate that they are warranted, reflects the district court's measured judgment to impose conditions causing no greater a deprivation of liberty than was reasonably necessary to satisfy those factors.[2]

### III.

For the foregoing reasons, we hold that the sentence imposed by the district court is procedurally and substantively reasonable, and we affirm the judgment of the district court.

AFFIRMED

---

[2] On appeal, Douglas complains about the invasiveness of a sex-offender evaluation, specifically its use of polygraphs and penile plethysmography testing. Although Douglas did not specifically raise this claim during the sentencing hearing, he did object collectively to the sex-offender evaluation condition and the separate condition that he submit to polygraph and plethysmograph examinations in his sentencing memorandum. The district court only imposed the former condition (the sex-offender evaluation), and it declined to impose the latter condition (pertaining to polygraphs and plethysmographs) pending the results of the evaluation. In any event, we have held that polygraphs and the plethysmograph test are "useful for treatment of sex offenders," and we have upheld the use of these tools as a condition of release. *See United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003) (internal quotation marks omitted). Accordingly, even assuming that the qualified mental health provider would include these examinations as a part of the initial sex-offender evaluation, it would not change our analysis of the reasonableness of the district court's exercise of its discretion to impose the condition in light of all of the circumstances and the goals of sentencing.