**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-4564**

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TIMOTHY SCOTT OLSON,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:18-cr-00233-RJC-DCK-1)

_____

Argued:  March 19, 2024                                    Decided:  August 20, 2024

_____

Before KING, THACKER, and RUSHING, Circuit Judges.

_____

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge King and Judge Thacker joined.

_____

**ARGUED:**  Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Wesley P. Page, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia; S. Frederick Winiker, III, WINIKER LAW FIRM, PLLC, Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

RUSHING, Circuit Judge:

Timothy Olson used peer-to-peer software to download child pornography. After Olson pled guilty to two child pornography offenses, the district court sentenced him to 120 months' imprisonment and a 30-year term of supervised release, with numerous special conditions. On appeal, Olson challenges six of those conditions, arguing that they are substantively unreasonable. Because none of these conditions is substantively unreasonable, we affirm.

## I.

Over several months, Olson, a fifth-grade elementary school teacher, used peer-to-peer software to download approximately 100 child pornography videos. The videos depicted the sexual abuse of prepubescent children as young as six under titles such as "9yo . . . pedo,preteen.mpeg." J.A. 169. A forensic examination of Olson's computer found searches for "8 yo brunette," "school and rape," and an acronym for "preteen hard core," as well as for methods to hide IP addresses. J.A. 137, 170. When law enforcement searched his home and seized his devices, Olson admitted in a recorded interview that he had downloaded the videos and knew how peer-to-peer software worked because of his master's degree in information systems management. Olson was arrested and pled guilty to knowingly transporting child pornography, in violation of 18 U.S.C. § 2252A(a)(1), and to knowingly possessing child pornography involving a prepubescent minor or a minor under the age of twelve, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).

At sentencing, the district court calculated Olson's recommended Guidelines range as 151 to 188 months' imprisonment. Olson requested a downward variance. He stressed

2

that he did not "require a longer than necessary prison sentence" because he could "benefit from supervision" and "treatment." J.A. 126. To support this argument, Olson submitted and relied upon an expert report evaluating his condition. The report found that Olson had certain "protective factors" that would "assist desistance from sexual offending" and "contribute to a lower likelihood of recidivism." J.A. 87 (internal quotation marks omitted). Those factors included "Sobriety," which the report defined as "No Excessive Use of Alcohol/Drugs." J.A. 87. However, the report also found that Olson had "[v]olunteer[ed] for roles that result in high access to children," J.A. 84, and had the same "predicted recidivism rate for both a future non-contact and/or contact sexual offense," J.A. 86. Summing up, the report acknowledged that Olson would have to serve time in prison but "recommended Mr. Olson be place[d] on long-term community supervision." J.A. 90.

The district court granted a downward variance, sentencing Olson to 120 months' imprisonment. Discussing the 18 U.S.C. § 3553(a) factors, the district court noted "various . . . factors that speak well" of Olson, such as his lack of criminal history and his "successful behavior on pretrial release." J.A. 148. Nevertheless, a "significant" sentence was required. J.A. 148. The district court explained that child pornography is a "horrific" and "difficult to detect crime"; that the "need for deterrence is dramatic"; that Olson, "as a teacher of young children," should have known the damage his crime would cause the victims; that his "downloading activity" was "significant"; and that his "scientific background" and "awareness of the peer-to-peer ability to share [the child pornography] with others [made] the commission of this criminal activity more repugnant." J.A. 149.

3

Consistent with Olson's request for a reduced sentence combined with long-term supervision, the district court then imposed a 30-year term of supervised release, below the statutory maximum of lifetime supervision. The court imposed about three dozen special conditions of supervision, most of which reflected the district's "standard" conditions for supervised release generally and for sex offenders in particular. To explain these conditions, the district court "incorporate[d] by reference" the details from its discussion of the Section 3553(a) sentencing factors. J.A. 153. Olson did not object to any of these conditions.

## II.

On appeal, Olson now challenges six of his conditions of supervised release as substantively unreasonable.[1] Because he did not object to the conditions at the time of sentencing, we review for plain error. *See United States v. McMiller*, 954 F.3d 670, 675 (4th Cir. 2020). Under that standard, Olson must show that an error occurred, it was plain, it affected his substantial rights, and it seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Id.* at 674. We first consider whether the district court erred.

_____

[1] Olson's previous counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that there are no meritorious grounds for appeal but questioning whether the district court abused its discretion by failing to hold an evidentiary hearing on Olson's motion to withdraw his guilty plea. After reviewing the record, this Court ordered supplemental briefs addressing two issues (in addition to the substantive reasonableness of the supervised release conditions): (1) whether Olson's guilty plea was knowing and supported by a factual basis, and (2) whether the district court adequately explained its reasons for imposing a 30-year term of supervised release. We have considered the original and supplemental briefs and find no reversible error as to any of those issues.

4

We review the imposition of special conditions for abuse of discretion, recognizing that district courts have "broad latitude" in this space. *United States v. Hamilton*, 986 F.3d 413, 419 (4th Cir. 2021) (internal quotation marks omitted). Under the relevant statute, 18 U.S.C. § 3583(d), district courts may impose any special condition they consider appropriate, so long as the condition (1) is "reasonably related" to the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation; (2) "involves no greater deprivation of liberty than is reasonably necessary" to achieve those goals; and (3) is "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d); *see also United States v. Douglas*, 850 F.3d 660, 663 (4th Cir. 2017). We consider each condition in turn.

## A.

Condition 8 provides: "The defendant shall not communicate or interact with any persons engaged in criminal activity, and shall not communicate or interact with any person convicted of a felony unless granted permission to do so by the probation officer." J.A. 160.

Condition 8 is reasonably related to Olson's offense. Olson knowingly used a peer-to-peer program to download child pornography videos. "Peer-to-peer file-sharing software enables a communal network," *United States v. Wheelock*, 772 F.3d 825, 831 n.4 (8th Cir. 2014), "in which the transportation of [downloaded files] from [the user's] computer to other users [is] . . . the very objective of the network," *United States v. Clarke*, 979 F.3d 82, 96 (2d Cir. 2020). On such networks, "any file a user has downloaded to his

5

computer is automatically accessible to others on the network." *United States v. Morehouse*, 34 F.4th 381, 392 n.9 (4th Cir. 2022) (internal quotation marks omitted). Olson is therefore wrong to insist that his "criminal conduct involved [no] other persons" and that he will not "reasonably return to an environment" where he could interact with criminals. Opening Br. 22.[2] He used a communal software that made his downloaded child pornography videos available to others engaged in the same criminal activity. Given the nature and circumstances of his offense, restricting Olson's interactions with felons and persons engaged in criminal activity is reasonably related to the statutory goals of deterrence, public safety, and rehabilitation.

Condition 8 is no greater a deprivation than is reasonably necessary to achieve these statutory goals. Olson needs to be prevented from returning to communal criminal activity. This condition targets the interactions necessary for such activity. Moreover, the condition is not absolute. Olson cannot interact with anyone engaged in criminal activity, but he can interact with convicted felons, so long as he gets permission from his probation officer. Olson counters that the condition is broader than reasonably necessary because it lacks a *mens rea* requirement. He claims the condition punishes even inadvertent interactions with persons engaged in criminal activity. However, "probationers generally may not be punished for inadvertent violations." *United States v. Comer*, 5 F.4th 535, 544 (4th Cir. 2021) (internal quotation marks omitted). And where a condition "lacks an explicit scienter requirement," "we do not hesitate to read an implied knowledge requirement into the

---

[2] References to "Opening Br.," "Response Br.," and "Reply Br." refer to the second round of supplemental briefs submitted in this case.

condition." *Id.*; *see also United States v. Linney*, No. 19-4590, 2021 WL 4439161, at *4 (4th Cir. Sept. 28, 2021) (per curiam) (upholding materially identical condition). Restricting Olson from knowingly interacting with criminals and felons is no greater a deprivation than is reasonably necessary.

Condition 8 is also consistent with the relevant policy statements from the Sentencing Commission. Repeating his *mens rea* argument, Olson claims Condition 8 is inconsistent with the Commission's "recommended" condition, which contains an explicit knowledge *mens rea*. *See* U.S.S.G. § 5D1.3(c)(8) ("The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer."). For the reasons previously discussed, Condition 8 has an implicit *mens rea* requirement, so there is no hint of inconsistency.

Accordingly, the district court did not abuse its discretion in imposing Condition 8.

B.

Condition 13 provides: "The defendant shall refrain from excessive use of alcohol and shall not unlawfully purchase, possess, use, distribute or administer any narcotic or controlled substance or any psychoactive substances (including, but not limited to, synthetic marijuana, bath salts) that impair a person's physical or mental functioning, whether or not intended for human consumption, or any paraphernalia related to such substances, except as duly prescribed by a licensed medical practitioner." J.A. 160.

7

Condition 14 requires Olson to submit to substance abuse testing and treatment if directed to do so.

Conditions 13 and 14 are reasonably related to Olson's offense and characteristics. At sentencing, Olson relied upon an expert report evaluating his condition. That report determined that Olson had certain "protective factors" that, if maintained, would "assist desistance from sexual offending" and "contribute to a lower likelihood of recidivism." J.A. 87 (internal quotation marks omitted). One protective factor was "Sobriety," defined as "No Excessive Use of Alcohol." J.A. 87. Olson argues that nothing in the record suggests that he has a problem with alcohol or that his crime was precipitated by alcohol use. But his expert report provides a "basis for believing Olson needs to be restrained from using alcohol." Opening Br. 25. The goals of deterrence, public safety, and rehabilitation are served by requiring Olson to maintain one of his "protective factors" against recidivism.

Conditions 13 and 14 are no greater deprivations than are reasonably necessary. By his own account, Olson should refrain from "Excessive Use of Alcohol." J.A. 87. These conditions do just that. Yet Olson now insists that the phrase "excessive use of alcohol" is unconstitutionally vague. Vagueness challenges to special conditions of supervised release are unlikely to succeed in our circuit. Because persons on supervised release have "three layers of protection from the fair-notice and arbitrary-enforcement concerns animating the void-for-vagueness doctrine,"[3] this Court will uphold a condition against a vagueness

---

[3] Persons on supervised release (i) can "seek guidance from [the] probation officer," (ii) "cannot be punished for inadvertent violations," and (iii) "can always bring an as-applied challenge." *Comer*, 5 F.4th at 544.

challenge unless the condition has "no core meaning," thereby granting the probation officer "unfettered power of interpretation." *Comer*, 5 F.4th at 544 & n.7 (internal quotation marks and emphases omitted).

"Excessive use of alcohol" has a core meaning that provides "fair notice of what conduct is prohibited." *Id.* at 544. "Excessive" here means "exceeding the usual, proper, or normal" level of alcohol consumption. Webster's Third New International Dictionary 792 (2002); *see also*, *e.g.*, Ctrs. for Disease Control & Prevention, *What is Excessive Alcohol Use?*, https://stacks.cdc.gov/view/cdc/30624/cdc_30624_DS1.pdf?download-document-submit=Download [https://perma.cc/HFJ4-RXPF] (defining "excessive alcohol use" as "binge drinking" and "heavy drinking"). Indeed, if "excessive use of alcohol" is too vague, it is unclear how the district court could target this conduct. Forcing district courts in this situation to allow all alcohol use, prohibit all alcohol use, or specify a number of drinks per day or blood alcohol limit would risk arbitrary and overbroad conditions and interfere with district courts' "broad latitude" in this space. *Hamilton*, 986 F.3d at 419 (internal quotation marks omitted). Therefore, requiring Olson to refrain from excessive alcohol use (and to undergo testing and treatment as directed) is neither impermissibly vague nor a greater deprivation of liberty than is reasonably necessary.

Finally, Conditions 13 and 14 are consistent with the relevant policy statements. The Sentencing Commission recommends two conditions when "the court has reason to believe that the defendant is an abuser of . . . alcohol." U.S.S.G. § 5D1.3(d)(4) (recommending "a condition requiring the defendant to participate in a [substance abuse] program" and "a condition specifying that the defendant shall not use or possess alcohol").

9

Olson argues that those conditions, and the similar conditions applied here, can be imposed *only* if the court has reason to believe that a defendant is a drug or alcohol abuser. But the Commission clearly states that these conditions "are recommended in the circumstances described and, in addition, may otherwise be appropriate in particular cases." *Id.* § 5D1.3(d). Restricting Olson's alcohol use and requiring testing and treatment if warranted is appropriate in his particular case.

Accordingly, the district court did not abuse its discretion in imposing Conditions 13 and 14.

C.

Condition 16 provides: "The defendant shall submit his/her person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), or other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer and such other law enforcement personnel as the probation officer may deem advisable, without a warrant. The defendant shall warn any other occupants that such premises may be subject to searches pursuant to this condition." J.A. 160.

Condition 16 is reasonably related to Olson's offense and history. As the district court explained, child pornography is a "difficult to detect crime" and the "need for [detection and] deterrence is dramatic," especially given Olson's "scientific background" in information systems technology. J.A. 149. Olson concedes that a search condition is "justified by his offense and background." Opening Br. 27; *see also* Reply Br. 6 ("Olson does not argue that a search condition is unwarranted in his case.").

10

Condition 16 is no greater a deprivation than is reasonably necessary. Olson disagrees because Condition 16 does not require reasonable suspicion to search. "Many courts have noted that child pornography is a difficult crime to detect [and deter] because it occurs under a shroud of secrecy," often in the confines of the home. *United States v. Sherman*, 268 F.3d 539, 549 (7th Cir. 2001). And those detection and deterrence problems are exacerbated by technologically savvy defendants who can conceal their activities from law enforcement. Other circuits have thus upheld search conditions that permit probation officers to search child pornography offenders' property, including electronic devices, "at any time, without a requirement of reasonable suspicion of a violation." *United States v. Boudreau*, 58 F.4th 26, 31, 33 (1st Cir. 2023) (collecting cases). This Court likewise has assumed that "suspicionless searches [of] sex offenders" are unobjectionable. *United States v. Shepard*, No. 21-4561, 2023 WL 5608089, at *3 (4th Cir. Aug. 30, 2023) (per curiam) (internal quotation marks omitted); *see also United States v. Blake*, 841 Fed. App. 535, 540 (4th Cir. 2021) (per curiam). Indeed, suspicionless searches make "eminent sense," since "a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality." *Samson v. California*, 547 U.S. 843, 854 (2006). Requiring child pornography offenders like Olson to submit to suspicionless searches is therefore no greater a deprivation than is reasonably necessary.[4]

---

[4] Olson responds that the suspicionless search condition "extinguishes [his] Fourth Amendment rights." Opening Br. 27. However, "supervised release conditions are not constitutionally infirm as long as they comport with 18 U.S.C. § 3583(d)." *Comer*, 5 F.4th at 545 (internal quotation marks and brackets omitted).

Condition 16 is also consistent with the relevant policy statement.  For sex offenders, the Sentencing Commission recommends:

> A condition requiring the defendant to submit to a search, at any time, with or without a warrant, and by any law enforcement or probation officer, of the defendant's person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant, *or* by any probation officer in the lawful discharge of the officer's supervision functions.

U.S.S.G. § 5D1.3(d)(7)(C) (emphasis added).  That language is clear.  It "allows a search by a probation officer 'in the lawful discharge of the officer's supervision functions,' even without reasonable suspicion."  *United States v. Parisi*, 821 F.3d 343, 348 (2d Cir. 2016) (per curiam).  Indeed, Condition 16 is not only consistent with this policy statement but is also expressly authorized by Section 3583(d) itself, which allows a materially identical condition[5] to be imposed on any felon who, like Olson, is "required to register under the Sex Offender Registration and Notification Act."  18 U.S.C. § 3583(d).

Accordingly, the district court did not abuse its discretion in imposing Condition 16.

---

[5] "The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, *and* by any probation officer in the lawful discharge of the officer's supervision functions."  18 U.S.C. § 3583(d) (emphasis added).

D.

Sex Offender Condition 8 provides: "The defendant shall not loiter within 100 feet of any parks, school property, playgrounds, arcades, amusement parks, day-care centers, swimming pools, community recreation fields, zoos, youth centers, video arcades, carnivals, circuses or other places primarily used or can reasonably be expected to be used by children under the age of eighteen (18), without prior written permission of the U.S. Probation Officer." J.A. 162.

Sex Offender Condition 8 is reasonably related to Olson's offense, history, and characteristics. Olson's conduct was "intrinsically related to the sexual abuse of children." *New York v. Ferber*, 458 U.S. 747, 759 (1982). So the fact that he "does not have a history of physically abusing children or loitering where there are children, does not mean that he does not pose a future threat to children." *United States v. Gibson*, 998 F.3d 415, 421 (9th Cir. 2021). Allowing him "to go to parks and other places which cater primarily to children for the purpose of viewing those to whom he is sexually attracted, may lead to viewing the same kinds of material for which he stands convicted," "interfere with sex offender treatment," and unnecessarily expose those children to danger. *Id.* (internal quotation marks omitted). For these reasons, child pornography offenders "whose crimes involved no physical contact with minors have been bound by anti-loitering provisions like the one here." *United States v. Zobel*, 696 F.3d 558, 575 (6th Cir. 2012) (collecting cases). Moreover, Olson's expert report found that Olson had a history of "[v]olunteering for roles that result in high access to children," J.A. 84, and had the same "predicted recidivism rate for both a future non-contact *and/or contact* sexual offense," J.A. 86 (emphasis added).

13

Restricting Olson's ability to loiter in places used by children is thus reasonably related to the statutory goals of deterrence, public safety, and rehabilitation.

Sex Offender Condition 8 is no greater a deprivation than is reasonably necessary. Olson should be kept away from children. This condition does that, while allowing Olson to loiter near any of these places with written permission from his probation officer. Olson responds that this condition is impermissibly broad because it extends to places that can "reasonably be expected to be used by children." J.A. 162. He interprets this language to bar him from "anyplace where minors could conceivably be present"—that is, "nearly any location." Opening Br. 29–30.

We have emphasized that "conditions are . . . given their commonsense meaning." *United States v. Cohen*, 63 F.4th 250, 254 (4th Cir. 2023) (internal quotation marks omitted). Sex Offender Condition 8 prohibits "loitering," which means "to remain in or near a place in an idle or apparently idle manner" or to "hang around aimlessly." Webster's Third New International Dictionary 1330 (2002). And the phrase "reasonably be expected to be used by children" follows a long list of places—parks, school property, playgrounds, arcades, amusement parks, day-care centers, swimming pools, community recreation fields, zoos, youth centers, video arcades, carnivals, and circuses—where children congregate or are likely to be. The condition thus has a core meaning that extends no further than reasonably necessary to protect the public. And Olson "can use common sense and consult his probation officer if there is any doubt as to a particular location." *Hamilton*, 986 F.3d at 423. Indeed, we recently upheld a similar condition against an overbreadth

14

and vagueness challenge. *See id.* at 423–424 (collecting cases). Sex Offender Condition 8 is no greater a deprivation than is reasonably necessary.

Finally, Sex Offender Condition 8 is consistent with the relevant policy statement, insofar as there is no relevant policy statement. Olson argues the condition is inconsistent because it does not appear among the Commission's "recommended" conditions for sex offenders. *See* U.S.S.G. § 5D1.3(d)(7). However, a district court "may impose *any* special condition" that complies with Section 3583(d), *Douglas*, 850 F.3d at 663 (emphasis added), "even if the Guidelines do not recommend those conditions," *Sealed Appellee v. Sealed Appellant*, 937 F.3d 392, 405 (5th Cir. 2019) (internal quotation marks omitted). Sex Offender Condition 8 complies with the first two requirements of Section 3583(d)— reasonable relation to the offense and no greater a deprivation than is reasonably necessary—and there is no pertinent policy statement for it to be inconsistent with. *See Hamilton*, 986 F.3d at 423–424 (approving near identical condition that does not appear in the Guidelines).

Accordingly, the district court did not abuse its discretion in imposing Sex Offender Condition 8.

E.

Sex Offender Condition 14 provides: "The defendant shall not possess any children's items, including, but not limited to, clothing, toys, and games without the prior approval of the U.S. Probation Officer." J.A. 162.

Sex Offender Condition 14 is reasonably related to Olson's offense, history, and characteristics. Olson committed a crime "intrinsically related to the sexual abuse of

15

children," *Ferber*, 458 U.S. at 759; has a history of seeking roles that "result in high access to children," J.A. 84; and has the same "predicted recidivism rate for both a future non-contact *and/or contact* sexual offense," J.A. 86 (emphasis added).  Olson no longer enjoys his high access role as an elementary school teacher.  Sex Offender Condition 14 prevents him from gaining access to children via the alternative means of enticement.  It is thus reasonably related to the statutory goals of deterrence, public safety, and rehabilitation.

Nor is Sex Offender Condition 14 a greater deprivation than is reasonably necessary.  Olson should be prevented from accessing children, and that is the focus of this condition.  Olson insists the condition is vague and overbroad because it could apply to "adult-played games," like "chess" and "*Settlers of Catan*."  Opening Br. 31.  But again, a condition is not impermissibly vague if it has a "core, commonsense meaning."  *Comer*, 5 F.4th at 544.  In context, the core meaning of "children's items" here is items primarily used by or intended for children, including children's clothing, toys, and games.  Olson can seek guidance from his probation officer when in doubt and "can always bring an as-applied challenge to future restrictions" on his access to children's games and toys.  *Id.*  Moreover, Olson can possess any children's item he wants if he receives his probation officer's prior permission.

Finally, Sex Offender Condition 14 is consistent with the relevant policy statement, insofar as there is no relevant statement.  Accordingly, the district court did not abuse its discretion in imposing Sex Offender Condition 14.

III.

In sum, the district court did not abuse its discretion in imposing any of these six conditions of supervised release.  Each one is substantively reasonable, so there was no error, much less plain error, which must be "clear or obvious" under "the settled law of the Supreme Court or this circuit."  *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013) (internal quotation marks omitted).  For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.